UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KALE SUNDERLAND-HERRIN, an individual, and LEONARDO ROCIO, JR., and LORENA ARMENTA, individuals,<br><br>         Plaintiffs,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; et al.,<br><br>         Defendants. | Case No.: 3:25-cv-0018-W-SBC<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING MOTION FOR RULING THAT ADVICE OF COUNSEL DEFENSE HAS BEEN WAIVED AND SUBJECT TO JUDICIAL ESTOPPEL**<br><br>**[Dkt. No. 39]** |

This Report and Recommendation is submitted to United States District Judge Thomas J. Whelan pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72(b), and Civil Local Rules 72.1(c) of the United States District Court for the Southern District of California. Currently before the Court is Plaintiff's March 5, 2026, Motion for Ruling that Advice of Counsel Defense Has Been Waived and Subject to Judicial Estoppel (hereafter "Motion") (Dkt. No. 39), Defendants' Response in Opposition (hereafter "Opposition") (Dkt. No. 46), and Plaintiff's Reply (hereafter "Reply") (Dkt. No. 49). The Motion moves for a ruling that Defendant has waived, and is judicially estopped from asserting, an advice of counsel defense.

1

Having carefully considered the parties' briefing, the record in this case, and the arguments presented, the Court **RECOMMENDS** that Plaintiffs' motion be **GRANTED**. The Court finds that Defendant unequivocally waived reliance on an advice of counsel defense during discovery, obtained a favorable ruling based on that position, and now seeks to reverse course after securing that advantage. Under these circumstances, both waiver principles and judicial estoppel apply.

## I.   BACKGROUND

### a.  Factual Background

The underlying dispute stems from a December 14, 2019, motor vehicle accident in which Plaintiff Kale Sunderland-Herrin suffered catastrophic injuries, including the loss of a leg, after being struck by a vehicle driven by Leonardo Rocio, Jr., who was insured under a policy issued by Defendant to Rocio and his guardian, Lorena Armenta. Shortly after the accident, Defendant undertook the handling of the claim and, on March 25, 2020, extended an offer to settle the claim for the $15,000 policy limit. On April 1, 2020, Plaintiff Sunderland's counsel issued a time-limited policy limit demand that included certain conditions, including the provision of a declaration of assets from Defendant's insureds.

Defendant contends that it timely and unequivocally accepted that demand on April 17, 2020, and provided a declaration of assets along with policy information. Plaintiffs dispute the adequacy of that response and maintain that Defendant failed to comply with the terms of the demand.

In the weeks that followed, the parties exchanged correspondence regarding the sufficiency of Defendant's acceptance and the documentation provided. Plaintiffs' counsel ultimately withdrew the demand and imposed additional conditions, including submission of a revised declaration of assets containing different terms. Defendant, through its coverage counsel Michael McGuire, maintained that a binding settlement had already been reached and raised concerns about the revised declaration.

Defendant also retained separate counsel, attorney Pete Gates, to advise its insureds regarding whether to execute the revised declaration. After consultation, the insureds

declined to submit the revised declaration based on perceived risks, including potential exposure arising from a recission provision. The underlying personal injury action proceeded, and the matter ultimately resulted in litigation that gave rise to the present action alleging bad faith.

Central to the issues in this case are Defendant's communications with its counsel (both coverage counsel and counsel representing the insureds) regarding settlement decisions, evaluation of the demand, and the handling of the claim. These communications include legal advice concerning whether a binding settlement had already been formed, whether additional conditions should be accepted, and how to balance the interests of Defendant and its insureds.

### b. Procedural Background

Plaintiffs initiated this action on January 6, 2025, asserting claims including breach of contract and breach of the implied covenant of good faith and fair dealing. Discovery in this matter was contentious and included multiple disputes regarding the scope of Defendant's document production, particularly as it related to communications between Defendant and its counsel. On December 13, 2024, and continuing through the first half of 2025, Plaintiffs sought production of unredacted claim notes and communications involving Defendant's coverage counsel.

Defendant consistently resisted those requests, asserting attorney-client privilege and work-product protection. In doing so, Defendant repeatedly represented that the communications at issue were not part of its defense in this action. The parties' dispute culminated in a discovery conference before the Court on June 30, 2025. (Dkt. No. 13.) At that conference, Plaintiffs explicitly raised the concern that Defendant might later assert an advice of counsel defense after withholding the underlying communications. In response, Defendant's counsel made a clear, on-the-record representation that Defendant was "not raising" an advice of counsel defense and further explained that such a defense was not pursued because it would result in waiver of the attorney-client privilege. (Motion at 5-6.)

Following that representation, Plaintiffs formally moved to compel production of the communications between Defendant and its counsel. (Dkt. No. 16.) Defendant opposed the motion, again maintaining that the communications were privileged and not being relied upon in support of any defense. (Dkt. No. 17.) The motion was fully briefed and heard by the Court on August 20, 2025. (Dkt. No. 19.) After considering the parties' submissions and arguments, the Court denied Plaintiffs' motion to compel and ruled that the communications at issue were protected by the attorney-client privilege. (*Id.*) The Court's ruling effectively accepted Defendant's position that the advice of counsel defense was not at issue in the case.

Thereafter, discovery continued and on March 6, 2026, Plaintiffs filed the present motion seeking to preclude Defendant from asserting an advice of counsel defense. (Dkt. No. 39.) In its opposition, Defendant asserted, for the first time in this litigation, that it denies liability "based upon reliance on the advice of its counsel" and further contended that it "has always relied" on such advice with respect to key issues, including settlement decisions and the handling of the underlying claim. (Dkt. No. 46; Opposition at 5, 14.)

Defendant also argued that the motion was moot because it produced certain documents and offered to produce additional communications, including those occurring after the filing of the underlying lawsuit. (Opposition at 15.) At the same time, Defendant filed a motion seeking leave to amend its answer to expressly assert advice of counsel related affirmative defenses. (Dkt. No. 45.)

Plaintiffs filed a reply emphasizing that the relief sought is preclusion of the defense – not merely production – and arguing that Defendant's reversal of position after securing a favorable discovery ruling warrants application of waiver and judicial estoppel. (Dkt. No. 49; Reply at 2-3, 10.)

## II.    LEGAL STANDARD

### a.    Waiver of Attorney-Client Privilege and Related Defenses

Waiver of the attorney-client privilege may occur expressly or impliedly. Express waiver arises when a client voluntarily or knowingly relinquishes the privilege, while

3:25-cv-0018-W-SBC

implied waiver occurs when a party injects privileged communications in litigation or discloses them to third parties, thus placing the information at issue and waiving confidentiality protections. Waiver of attorney-client privilege is governed by Federal Rule of Evidence 502. Fed. R. Evid. 502.

Express waiver requires three conditions: "(1) the waiver is intentional; (2) the disclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." *Roberts v. Legacy Meridian Park Hosp., Inc.*, 97 F.Supp.3d 1245, 1252 n4 (D. Or. 2015). Implied waiver is commonly associated with a reliance on advice of counsel as a defense, which makes the communication essential to a claim or defense.

Implied waiver requires three elements: "(1) the party asserts the privilege as a result of an affirmative act, such as filing suit; (2) through the affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense." *Genentech, Inc. v. Insmed Inc.*, 236 F.R.D. 466, 468 (N.D. Cal. 2006); *Home Indemnity Co. v. Lane Powell Moss and Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995).

The waiver of attorney-client privilege does not control the waiver of related defenses such as the advice of counsel. An inquiry into waiver of such a defense, however, follows the formal privilege waiver analysis and is governed by principles of fairness to prevent a party from using the privilege as both a sword and shield. *Chiron Corp. v. Genentech, Inc.*, 179 F.Supp.2d 1182, 1185-91 (E.D. Cal. 2001).

### b. Judicial Estoppel

Judicial estoppel is an equitable doctrine intended to protect the integrity of the judicial process. It applies where: (1) a party's later position is clearly inconsistent with its earlier position; (2) the earlier position was accepted by the court; and (3) the party would derive an unfair advantage or impose an unfair detriment if not estopped. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001). Whether to apply the doctrine of judicial estoppel lies within the discretion of the Court. Judicial estoppel is particularly appropriate where a

party seeks to "play fast and loose" with the courts by changing positions based on shifting litigation incentives. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).

### III.    DISCUSSION

#### a.    Defendant Did Not Waive Attorney-Client Privilege During Discovery

Defendant neither expressly nor impliedly waived attorney-client privilege. Under the express waiver analysis, the analysis stops at the first prong – whether the waiver was intentional. It is clear from Defendant's opposition to the motion to compel that it has never intended to waive the attorney client privilege. (Dkt. No. 17.)

Turning to implied waiver of the attorney-client privilege, Defendant asserted the privilege during discovery while expressly disclaiming reliance on advice of counsel. At that time, Defendant did not place privileged communications at issue. There was no implied waiver.

While it is clear that Defendant did not waive attorney-client privilege, the Court's conclusion that no privilege waiver occurred during discovery does not preclude a finding that Defendant waived its ability to later assert an advice of counsel defense through its litigation conduct.

#### b.    Defendant Waived the Right to Later Use the Advice of Counsel Defense

As discussed *supra*, at the time of the discovery dispute, Defendant clearly did not place the advice of counsel defense at issue. However, Defendant's subsequent attempt to affirmatively rely on advice of counsel constitutes a clear shift in position in which a finding of waiver is necessary to protect judicial fairness. Waiver is the "voluntary or intentional relinquishment of a known right" and focuses on "the mental attitude of the actor." *Royal Air Properties, Inc. v. Smith,* 333 F.2d 568, 571 (9th Cir. 1964). "Since waiver is a voluntary act, there must be knowledge of the right in question before the act of relinquishment can occur." *Id.* In this case, State Farm did not merely fail to affirmatively raise an advice of counsel defense but in fact expressly *disclaimed* it. During the June 30,

2025, discovery conference, Defendant stated plainly that it was not "raising [advice of counsel] as a defense." (Motion at 5.) Defendant's counsel underscored this decision by stating that in his "40 years" of experience that the defense "never really had legs" and therefore was not something that Defendant intended to rely on. (Motion at 5-6.) Having made the strategic choice to assert the privilege, Defendant cannot now reclaim the defense after the close of discovery without undermining the fairness of the proceedings.

### c. All Elements of Judicial Estoppel are Satisfied

This case satisfies all three elements required to apply judicial estoppel. First, a party's later position must be clearly inconsistent with its earlier position. *New Hampshire*, 532 U.S. at 750-51. In this case, Defendants' earlier position that it would not raise the advice of counsel defense is clearly inconsistent with its later position that it "has always relied" on such advice. (Motion at 5-6; Opposition at 14.) Defendant's inconsistent position is direct and irreconcilable.

Second, the earlier position must be accepted by the court. *New Hampshire*, 532 U.S. at 750-51. The Court's ruling on Plaintiffs' Motion to Compel (Dkt. No. 16) denying the motion to compel based on representations made by Defendant (Dkt. No. 19) constitutes judicial acceptance of Defendant's prior position that it would not raise the advice of counsel defense. The Court accepted Defendant's earlier position when it denied Plaintiffs' motion to compel and upheld Defendant's privilege assertions. The Court finds that Defendant's representation was material to, and formed part of the basis for, the Court's prior ruling denying the motion to compel production of documents which contained material over which the attorney-client privilege was being asserted. That ruling necessarily rested on the understanding that Defendant was not placing attorney advice at issue. Had Defendant indicated otherwise, the scope of discoverable material, and the Court's ruling, may have been materially different. Therefore, the Court accepted Defendant's position that it would not raise the advice of counsel defense when it denied Plaintiff's motion.

3:25-cv-0018-W-SBC

Lastly, judicial estoppel requires that the party would derive an unfair advantage or impose an unfair detriment if not estopped. *New Hampshire*, 532 U.S. at 750-51. In this case, Defendant obtained a significant litigation advantage by preserving a privilege and avoiding discovery into its communications with counsel. It now seeks a second advantage by relying on those same communications to support its defense – after discovery has closed. Plaintiffs were deprived of the opportunity to explore that defense through depositions, document discovery, and expert analysis. This prejudice cannot be fully cured by belated production. Permitting Defendant to proceed would reward strategic inconsistency and undermine confidence in the judicial process.[1]

### d.  Defendant's Arguments Do Not Cure the Defect

Defendant's arguments regarding mootness and subsequent document production are unpersuasive. The relief sought is not merely production – it is preclusion of a defense. The harm arises from Defendant's litigation conduct and the advantage already obtained, not simply from the absence of documents. Nor do asserted changes in circumstances justify reversal. Litigation strategy does not permit a party to abandon a position when convenient and later revive it when it is advantageous.

### e.  Preclusion is the Appropriate Remedy

Given the clear waiver of the advice of counsel defense, the satisfaction of judicial estoppel factors, and the prejudice to Plaintiffs, preclusion of the advice of counsel defense is the appropriate and proportionate remedy. Lesser remedies such as reopening discovery, would not adequately address the strategic advantage already obtained and would further

---

[1] Parties are bound by the conduct of their chosen counsel and the agency principle prevents strategic re-litigation after a party receives new representation. *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962). Generally, a party voluntarily chooses their attorney as representative and therefore cannot avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney." *Id.* Therefore, despite the change of counsel in this case, Defendants are held to the representations made by prior counsel.

delay the proceedings. Preclusion is the most appropriate remedy under the circumstances and avoids the substantial prejudice and delay that would otherwise result from reopening discovery.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an order granting Plaintiffs' Motion and it is further **RECOMMENDED** that Defendant be estopped from asserting an advice of counsel defense.

It is **HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties no later than **May 11, 2026**.

It is **FURTHER ORDERED** that any reply to the objections shall be filed with this court and served on all parties no later than **May 26, 2026**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158, F.3d 449, 455 (9th Cir. 1988).

**IT IS SO ORDERED.**

Dated: April 27, 2026

Hon. Steve B. Chu
United States Magistrate Judge

3:25-cv-0018-W-SBC